**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 10-cv-01422-REB

MARCELLOUS ANDER ROEBUCK,

      Applicant,

v.

ANGEL MEDINA, and
JOHN SUTHERS, Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

**Blackburn, J.**

      This matter is before me on the ***pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** ("Application") [#3][1] filed June 17, 2010, by Applicant Marcellous Ander Roebuck.  Respondents have filed an **Answer to Application for Writ of Habeas Corpus** ("Answer") [#22], and Applicant has filed **Applicant's Traverse** ("Traverse") [#25].  After reviewing the pertinent portions of the record in this case, including the Application, the Answer, the Traverse, and the state court record, I conclude that the Application should be denied.

## I.  BACKGROUND

      Applicant is challenging the validity of his conviction in District Court, Fremont County, Colorado, case number 00CR412.  Applicant and Herbin Thompson were

---

[1] "[#3] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

arrested in connection with the shooting death of Matt Ownbey on December 12, 2000.

Applicant and Mr. Thompson had arranged to meet Mr. Ownbey to obtain marijuana,

and the shooting occurred while Applicant and Mr. Thompson were robbing Mr.

Ownbey.  Applicant and Mr. Thompson were arrested the following day, and Applicant

confessed during a police interview to robbing and shooting the victim.  Applicant was

charged with conspiracy to commit robbery, aggravated robbery, first degree murder,

first degree felony murder, tampering with physical evidence, and a crime of violence

count regarding the aggravated robbery.

After Applicant's motion to suppress his confession and other evidence was

denied, he entered a guilty plea to second degree murder, conspiracy to commit

aggravated robbery, aggravated robbery, and tampering with physical evidence.  The

plea agreement provided that Applicant would receive a minimum sentence of forty-eight

years in prison, that the sentences for each count could be imposed consecutively, and

that the maximum possible prison sentence was ninety-five years.  On July 25, 2001,

Applicant was sentenced to forty-eight years in prison for second degree murder, thirty-

two years in prison for aggravated robbery, twelve years in prison for conspiracy, and

three years in prison for tampering with physical evidence.  With the exception of the

conspiracy count, the sentences were ordered to run consecutively for a total term of

eighty-three years in prison.  Applicant did not appeal the sentences imposed.

On November 21, 2001, Applicant filed in the trial court a motion pursuant to Rule

35(b) of the Colorado Rules of Criminal Procedure (Crim.P.) seeking reconsideration of

his sentence at a later date.  The postconviction Crim.P. 35(b) motion remained pending

for a number of years.  On February 14, 2003, Applicant filed in the trial court a

postconviction motion pursuant to Crim.P. 35(c).  That motion also remained pending for

a number of years.  Ultimately, following a series of hearings that concluded on

November 15, 2007, the trial court denied both the Crim.P. 35(c) and 35(b) motions.

The Colorado Court of Appeals affirmed the denial of postconviction relief.  **See People**

**v. Roebuck**, No. 07CA2434 (Colo. App. Dec. 10, 2009) (unpublished decision) [#11-2].

On April 15, 2010, the Colorado Supreme Court denied Applicant's petition for writ of

certiorari in the state court postconviction proceedings.

## II.  FEDERAL COURT PROCEEDINGS

Applicant asserts one claim for relief in the Application, which claim has a number

of sub-parts, contending that his Sixth Amendment rights were violated because counsel

was ineffective.  During the initial review of the Application, an order [#13] was entered

finding that this action is timely and that Applicant has exhausted state remedies for

three sub-parts of the ineffective assistance of counsel claim that were identified as

claims 1(b), 1(d), and 1(g).  Applicant alleges in the exhausted claims that counsel was

ineffective by:  failing to investigate exculpatory witnesses prior to the preliminary

hearing (claim 1(b)); failing to investigate potential defenses such as intoxication, self-

defense, defense of others, and choice of evils (claim 1(d)); and failing to ensure that

Applicant understood the consequences of his guilty plea and possible sentence (claim

1(g)).  The other sub-parts of Applicant's ineffective assistance of counsel claim, which

were found to be unexhausted and procedurally barred, were dismissed at that time.

Therefore, only claims 1(b), 1(d), and 1(g) remain to be considered on the merits.

3

### III.  STANDARD OF REVIEW

I must construe the Application and other papers filed by Applicant liberally

because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519,

520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I

should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued

with respect to any claim that was adjudicated on the merits in state court unless the

state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*,

131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's

decision resulted from an unreasonable legal or factual conclusion does not require that

there be an opinion from the state court explaining the state court's reasoning."  *Id*. at

784.  Furthermore, "[w]hen a federal claim has been presented to a state court and the

state court has denied relief, it may be presumed that the state court adjudicated the

claim on the merits in the absence of any indication or state-law procedural principles to

4

the contrary." *Id*. at 784-85.  Even "[w]here a state court's decision is unaccompanied

by an explanation, the habeas petitioner's burden still must be met by showing there

was no reasonable basis for the state court to deny relief." *Id*. at 784.  In other words, I

"owe deference to the state court's result, even if its reasoning is not expressly stated."

*Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the

state court's summary decision unless [my] independent review of the record and

pertinent federal law persuades [me] that its result contravenes or unreasonably applies

clearly established federal law, or is based on an unreasonable determination of the

facts in light of the evidence presented." *Id*. at 1178.  "[T]his 'independent review'

should be distinguished from a full de novo review of the petitioner's claims." *Id*.

      I review claims of legal error and mixed questions of law and fact pursuant to 28

U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The

threshold question I must answer under § 2254(d)(1) is whether Applicant seeks to

apply a rule of law that was clearly established by the Supreme Court at the time his

conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly

established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.

Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or similar
> to the case *sub judice*.  Although the legal rule at issue
> need not have had its genesis in the closely-related or similar
> factual context, the Supreme Court must have expressly
> extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

5

federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id*. at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id*. at 411.  "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." **Maynard**, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.  [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

**Richter**, 131 S. Ct. at 786 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." **Id**.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." **Maynard**, 468 F.3d at 671; **see also Richter**, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

**Richter**, 131 S. Ct. 786-87.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  **See**

**Romano v. Gibson**, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2)

allows me to grant a writ of habeas corpus only if the relevant state court decision was

based on an unreasonable determination of the facts in light of the evidence presented

to the state court.  Pursuant to § 2254(e)(1), I must presume that the state court's factual

determinations are correct and Applicant bears the burden of rebutting the presumption

by clear and convincing evidence.  "The standard is demanding but not insatiable . . .

[because] '[d]eference does not by definition preclude relief.'"  **Miller-El v. Dretke**, 545

U.S. 231, 240 (2005) (quoting **Miller-El v. Cockrell**, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is

not procedurally barred, I must review the claim **de novo** and the deferential standards

of § 2254(d) do not apply.  **See Gipson v. Jordan**, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV.  MERITS OF THE CLAIMS

As noted above, each of Applicants surviving claims implicates his Sixth

Amendment right to the effective assistance of counsel.  It was clearly established when

Applicant was convicted that a defendant has a right to effective assistance of counsel.

**See Strickland v. Washington**, 466 U.S. 668 (1984).  Ineffective assistance of counsel

claims are mixed questions of law and fact.  **See id**. at 698.

To establish that counsel was ineffective, Applicant must demonstrate both that

counsel's performance fell below an objective standard of reasonableness and that

counsel's deficient performance resulted in prejudice to his defense.  **See id**. at 687.

"Judicial scrutiny of counsel's performance must be highly deferential."  **Id**. at 689.

8

There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id*. It is Applicant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id*. "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). Furthermore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

Under the prejudice prong, Applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* To show prejudice in the context of a guilty plea, Applicant must demonstrate a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty but would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In determining whether Applicant has established prejudice, I must look at the totality of the evidence and not just the evidence that is helpful to Applicant. *See Boyd*, 179 F.3d at 914.

Finally, conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claims must be dismissed. *See Strickland*, 466 U.S. at 697.

**A.  Claim 1(b)**

Applicant contends in claim 1(b) that counsel failed to investigate exculpatory witnesses prior to his preliminary hearing.  Although he does not elaborate on this claim in the Application, in his Traverse Applicant presents the following argument in support of claim 1(b):

> The facts of this care are not in dispute.  [Applicant] was arrested and charged with two counts of first degree murder, i.e., one count of first degree murder after deliberation and one count of felony murder (same victim/two theories).  These charges stem from the shooting of the victim following what is alleged to have been a robbery.
>
> There were two witnesses [Applicant] sought to have counsel interview prior to the preliminary hearing.  These two witnesses were Desiree Johnson and Dawn Deola.  Ms. Deola would have testified that she saw Mr. Thompson, [Applicant's] codefendant, with the handgun prior to the shooting.  In other words, Mr. Thompson had possession and control over the weapon which was used to kill the victim.  Ms. Johnson actually witnessed the event, i.e., the shooting, and would have testified not only that Mr. Thompson had the weapon while in the house prior to the shooting of the victim (that Mr. Thompson had been playing with it and holding it up to the victim's head), but that this play had ended up in there being a three-way struggle over the handgun, which is how the victim got shot.  Following the shooting she saw [Applicant] in possession of the handgun.
>
> While [Applicant] admitted to the shooting, he did not admit that it was a first degree murder under either theory.  In fact, his theory of the case (which was fact), was that the victim was shot accidentally.  When the victim and Mr. Thompson started struggling over the handgun, he became involved.  He believed he shot the victim as he ended up with the handgun in his possession immediately following the shot being fired.  Nonetheless he didn't have any intent to shoot the vict[i]m, nor to rob the victim.  Instead the robbery, i.e., theft of marijuana came after the fact, when he and Mr. Thompson f[le]d.
>
> The police in their video interviews, which is all that counsel

reviewed, failed to elicit this information from either witness. Hence [Applicant] asked counsel to interview them, for the purpose of having him bound over on lesser charges rather than first degree murder charges.  [Applicant] admitted culpability, simply not that of first degree murder.  As a result, the plea agreement to second degree murder was no bargain, but rather the maximum of [Applicant's] culpability.

Had counsel done his job and gotten the correct information from Ms. Johnson and Ms. Deola, there is a reasonable probability that [Applicant] would not have been bound over following his preliminary hearing on first degree murder charges, but rather second degree.  In turn, this would have been advantag[e]ous to [Applicant] in the plea bargaining process, i.e., he may have been able to strike a better plea deal.  Either one to a charge like manslaughter, or to second degree murder with a greater sentencing concession, such as a presumptive range sentence.  Certainly, given the facts of the case, there is a reasonable probability that had [Applicant] been bound over on lesser charges, he would have minimally received a plea bargain or offer to a sentence of less than that he received, as he currently sits on the maximum amount of time which could be imposed on a second degree murder conviction.  Moreover, the robbery charge would have been disposed of and [Applicant] most likely would have been bound over on theft charges.

Once counsel understood that there were problems with the taped interviews where the police asked only their questions (which put [Applicant] in a light most favorable to the prosecution) it is clear that counsel had an obligation to directly interview the two witnesses to determine (prior to the preliminary hearing) what information could be presented which would lessen the charges his client, [Applicant] was facing.  Failure to do this certainly was constitutionally deficient performance which prejudiced [Applicant] as he was charged with first degree murder rather than a lesser offense.

([#25] at 4-6 (footnote omitted).)

The Colorado Court of Appeals applied the proper federal constitutional

standards set forth in ***Strickland*** and rejected Applicant's ineffective assistance of

counsel claim challenging counsel's failure to interview eyewitnesses based on the

following reasoning:

> [Applicant] argues his counsel should have personally interviewed the witnesses to the crime. The district court did not make a specific finding as to this assertion. However, the record reflects that counsel had reviewed the videotaped police interviews of the witnesses, and he and his investigator had spoken to two of the witnesses briefly before the preliminary hearing. [Applicant] claims the lack of personal interviews influenced his decision to plead guilty but does not explain why this is so. *See Davis*, 871 P.2d at 773 ("[A]n attorney's decision not to interview certain witnesses and to rely on other sources of information, if made in the exercise of reasonable professional judgment, does not amount to ineffective assistance.").
>
> As the district court observed, [Applicant] made a detailed confession in a videotaped interview with the police. [Applicant] admitted that he, not his codefendant, shot the victim. The trial court denied his pretrial motion to suppress the confession, and [Applicant] failed to explain how counsel's interviewing the witnesses would have produced evidence that would counteract his own words.
>
> Thus, [Applicant] did not demonstrate deficient performance or prejudice from the alleged lack of witness interviews. *See People v. Gandiaga*, 70 P.3d 523, 526 (Colo. App. 2002) (the defendant failed to establish prejudice when he did not produce any evidence of the willingness of the other witnesses to testify or make an offer of proof with respect to the substance, credibility, or admissibility of their anticipated testimony).

([#11-2] at 6-7.)

It appears that the ineffective assistance of counsel claim challenging counsel's

failure to interview witnesses, which claim was raised by Applicant in the state court

postconviction proceedings was broader than claim 1(b) in the instant action, which

claim is limited to counsel's alleged failure to interview two specific witnesses prior to the

12

preliminary hearing.  Nevertheless, I find that the state court's reasoning is neither

contrary to nor an unreasonable application of the clearly established federal law set

forth in **Strickland** as it relates to Applicant's claim 1(b).  In particular, the state court

found, and Applicant concedes in his Traverse, that counsel had reviewed the

videotaped police interviews of the two witnesses in question prior to the preliminary

hearing.  Given that a preliminary hearing determines only whether probable cause

exists to believe that the offense charged in the information or felony complaint was

committed by the defendant, **see** Colo. Rev. Stat. § 16-5-301 (C.R.S.), and that the

evidence at a preliminary hearing must be considered in the light most favorable to the

prosecution, **see People v. District Court**, 926 P.2d 567, 570 (Colo. 1996), Applicant

cannot demonstrate that counsel's alleged failure to personally interview Ms. Johnson

and Ms. Deola prior to the preliminary hearing amounts to deficient performance.

For the same reason, Applicant also cannot demonstrate that he suffered any

prejudice as a result of counsel's allegedly deficient performance.  For one thing, the

information Applicant contends Ms. Johnson and Ms. Deola would have presented at

the preliminary hearing, i.e., that Mr. Thompson had possession of the gun prior to the

shooting and that the victim was shot during a struggle for control of the gun, actually

was presented at his preliminary hearing.  Although not called as a witness by

Applicant's attorney, the trial court held a combined preliminary hearing for Applicant

and Mr. Thompson during which Ms. Johnson was called as a witness by Mr.

Thompson's attorney.  Ms. Johnson's testimony included her observations that Mr.

Thompson initially had been holding the gun and that there was a three-way struggle for

the gun before the victim was shot.  (Prelim. Hr'g Tr. at 72-73.)  The following additional

information relevant to the charges of first degree murder and aggravated robbery also

was presented at the combined preliminary hearing:

- Applicant's statements that he shot the victim (*Id*. at 33, 42);

- Applicant's statement that he and Mr. Thompson decided to rob the victim
  before he was shot (*Id*. at 32-34);

- witness statements that Applicant and Mr. Thompson planned to rob the
  victim (*Id*. at 7, 11, 20);

- Mr. Thompson's statements that he initially pointed the gun at the victim
  and that they were going to rob the victim (*Id*. at 36-37, 48-49);

- Mr. Thompson's statements that Applicant was pointing the gun at the
  victim during the robbery (*Id*. at 37, 49);

- Mr. Thompson's statement that Applicant shot the victim while the victim
  was backing away (*Id*. at 50, 52);

- Ms. Johnson's statement that she saw Applicant pull the trigger of the gun
  and she saw the gun jam shortly before hearing a gunshot (*Id*. at 74-75).

When viewed in the light most favorable to the prosecution, the evidence

presented at the combined preliminary hearing establishes probable cause to believe

that Applicant committed the crimes charged, including the crimes of first degree murder

and aggravated robbery.  To the extent conflicting testimony was presented about

whether there was a struggle over the gun and who initially was holding the gun, that

testimony obviously did not negate the existence of probable cause for either of the first

14

degree murder charges.  Applicant's assertion in his Traverse that he did not intend to rob the victim also does not negate the fact that sufficient evidence was presented at the preliminary hearing to establish probable cause for the aggravated robbery charge. Therefore, Applicant's argument that he would not have been bound over on either of the first degree murder charges or the aggravated robbery charge if counsel had interviewed Ms. Deola and Ms. Johnson prior to the preliminary hearing is unpersuasive. Even more importantly, Applicant's argument that he may have been able to obtain a more favorable plea agreement does not demonstrate that, but for counsel's alleged failure to interview Ms. Johnson and Ms. Deola prior to the preliminary hearing, he would not have pled guilty and would have insisted on going to trial.  *See Hill*, 474 U.S. at 59. As a result, I find that Applicant is not entitled to relief on his claim that counsel was ineffective by failing to investigate exculpatory witnesses prior to the preliminary hearing.

## B.  Claim 1(d)

Applicant contends in claim 1(d) that counsel failed to investigate potential defenses such as intoxication, self-defense, defense of others, and choice of evils.  He alleges in support of claim 1(d) that he was intoxicated at the time of the offenses and could not make clear, intelligent decisions; that he was not the initial aggressor and was forced to defend himself and others after being threatened with the gun by the victim; and that evidence existed that he used necessary force to avoid an imminent public or private injury.  (*See* [#3] at 9-10, [#25] at 8-9.)

The Colorado Court of Appeals applied clearly established federal law and rejected this claim for the following reasons:

[Applicant] also contends plea counsel was ineffective in failing to investigate intoxication, self-defense and defense of others, and choice of evils as possible defenses.  Again, we disagree.

### a.  Intoxication

Voluntary or self-induced intoxication is not an affirmative defense, but evidence of it may be offered "when it is relevant to negative the existence of a specific intent if such intent is an element of the crime charged."  § 18-1-804(1), C.R.S. 2009; *see People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).

[Applicant] was initially charged with, among other counts, felony murder.  A person commits felony murder if he commits a robbery and, in the course of or in furtherance of the robbery or the immediate flight therefrom, the death of a nonparticipant is caused by anyone. § 18-3-102(1)(b), C.R.S. 2009.  Felony murder itself requires no mental state, and the requisite mental state for the crime of robbery is "knowingly." *See* §18-4-301, C.R.S. 2009; *People v. Fisher*, 9 P.3d 1189, 1191 (Colo. App. 2000) (the mental state required for the underlying felony substitutes for the culpable mental state in felony murder, which is a strict liability crime); *see also People v. Roark*, 643 P.2d 756, 773 (Colo. 1982) (evidence of self-induced intoxication is not relevant to crimes requiring a culpable mental state of "knowingly").

Thus, because intoxication would not have been a valid defense against the felony murder charge, the district court correctly concluded that plea counsel was not ineffective for failing to further investigate [Applicant's] alleged intoxication.

### b.  Self-Defense

[Applicant] also claims plea counsel should have investigated the theory of self-defense and defense of others.  *See* §18-1-704, C.R.S. 2009.  However, the district court concluded that, under the facts and circumstances of this case, [Applicant] was the initial aggressor and could not claim self-defense when he provoked the alleged or perceived attack by the victim.  *See* §18-1-704(3)(b), C.R.S.

2009 (an initial aggressor justifiably may use force in self-defense only if "he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force"); *People v. Toler*, 9 P.3d 341, 350 (Colo. 2000) (an initial aggressor "must retreat before employing physical force in self-defense").

Therefore, because self-defense and defense of others did not apply under the facts of this case, plea counsel was not ineffective for not investigating it.

c. Choice of Evils

The district court also properly concluded counsel was not ineffective for not investigating "choice of evils" as a defense strategy. Under the facts here, choice of evils was unavailable as a defense.

Choice of evils is only applicable when the defendant commits a crime because it is "necessary as an emergency measure to avoid an imminent public or private injury that was about to occur [because] of a situation occasioned or developed through no conduct of the [defendant]." *People v. Al-Yousif*, 206 P.3d 824, 831 (Colo. App. 2006); *see* § 18-1-702(1), C.R.S. 2009. [Applicant's] confession precluded the use of this defense.

Therefore, we conclude the district court properly determined that plea counsel's investigative choices did not fall below the standard of a competent defense attorney.

([#11-2] at 7-10.)

The state court's determination that counsel's investigative choices did not

amount to defective performance is neither contrary to nor an unreasonable application

of *Strickland*. This is particularly true given Applicant's confession to robbing and

shooting the victim. Although Applicant argues that intoxication could have been used

as an affirmative defense to the first degree murder charge, he apparently concedes that

intoxication was not available as a defense with respect to the charge of felony murder. (*See* [#25] at 9.) In fact, Applicant does not even address the state court's conclusion that, under Colorado state law, self-induced intoxication was not a defense to the felony murder charge because the requisite mental state for robbery under Colorado law is "knowingly." Furthermore, although Applicant asserts in the Application that "[t]here was no evidence offered by the prosecution that would show that [Applicant] voluntarily self-induced his intoxication" ([#3] at 9), Applicant does not contend that his intoxication was not self-induced and, in fact, he states in the Traverse that he "informed counsel that he had been drinking heavily that day" ([#25] at 8).

With respect to the defenses of self-defense and defense of others, Applicant's argument that he feared for his life once the struggle over the gun ensued does not negate the fact that those defenses were unavailable under Colorado state law because the state courts determined he was an initial aggressor. Although Applicant contends that "there was evidence and testimony by the State's witnesses that [he] was not the aggressor" ([#3] at 9), he fails to identify the evidence and testimony on which he relies. As a result, his conclusory, uncircumstantiated assertion that he was not an initial aggressor does not support his claim that counsel was ineffective. *See Humphreys*, 261 F.3d at 1022 n.2 (stating that conclusory allegations of ineffectiveness are not sufficient to warrant habeas relief). In any event, I find no support in the state court record for Applicant's contention that he was not an initial aggressor.

Applicant's conclusory argument regarding the defense of choice of evils also does not demonstrate counsel was ineffective by failing to investigate that defense. *See*

18

*id*.

Ultimately, Applicant is not entitled to relief with respect to claim 1(d) because he fails to overcome the "strong presumption" that counsel's performance was within the range of "reasonable professional assistance." **Strickland**, 466 U.S. at 689; **see also Humphreys**, 261 F.3d at 1022 n.2 (stating that conclusory allegations of ineffectiveness are not sufficient to warrant habeas relief).  In short, Applicant offers no factual or legal argument that demonstrates counsel's failure to further investigate these defenses was completely unreasonable under the circumstances.  **See Boyd**, 179 F.3d at 914.

## C.  Claim 1(g)

Applicant contends in claim 1(g) that counsel failed to ensure Applicant understood the consequences of his guilty plea and possible sentence.  According to Applicant, he specifically was misadvised by his counsel that there was a possibility the sentences he was facing could be imposed concurrently when, as a matter of Colorado state law, the trial court was required to impose consecutive sentences.  "In other words, any hope that [Applicant] held for concurrent sentences, a hope upon which he detrimentally relied when deciding to enter his plea, was based on a false advisement." ([#25] at 12.)

The Colorado Court of Appeals applied clearly established federal law and rejected this claim for the following reasons:

> [Applicant] next contends plea counsel and the trial court did not ensure he understood the terms of his plea agreement and the possible sentence he could receive.  We are not persuaded.
>
> The district court determined plea counsel was more

credible in his testimony than [Applicant], and its determination is supported by the record.  ***See Kailey***, 807 P.2d at 567.  The court concluded counsel had appropriately advised [Applicant] regarding the potential range of sentences and the possibility they could be imposed to run consecutively.  The written plea agreement and the providency hearing transcript show [Applicant] affirmed his understanding of the possible sentences, including that his sentence was to be a minimum of forty-eight years.  The court did not find believable either [Applicant's] claim that he thought his maximum sentence could only be forty-eight years or that he did not comprehend the matters discussed at the providency hearing.

[Applicant] also argues he was not advised by counsel or the trial court that several of his convictions were crimes of violence that are required to be served consecutively under section 18-1.3-406(1)(a), C.R.S. 2009.  However, the transcript of the sentencing hearing shows the trial court aggravated [Applicant's] sentences and imposed them to run consecutively as a matter of its discretion.  ***See*** 18-1.3-401(6) - (7), C.R.S. 2009.  The written plea agreement specified that any sentence could be imposed consecutively.  Thus, [Applicant] did not suffer any prejudice from the alleged lack of advisement.

([#11-2] at 10-12.)

Pursuant to § 2254(e)(1), I must presume the state court's factual determinations are correct unless Applicant rebuts the presumption with clear and convincing evidence. Here, Applicant presents no evidence, let alone clear and convincing evidence, to rebut the presumption.  Therefore, I must presume that Applicant properly was advised by counsel regarding the potential range of sentences and that the sentences could be imposed to run consecutively.  Under these circumstances, the state court's determination that Applicant did not suffer any prejudice is neither contrary to nor an unreasonable application of ***Strickland***.  Applicant was advised and knew that he could

receive consecutive sentences for the crimes to which he was pleading guilty and the trial court imposed consecutive sentences.

Even assuming, as Applicant alleges, that he agreed to plead guilty based on the stated possibility that he could receive concurrent sentences, which apparently was not possible under state law, the Colorado Court of Appeals determined that the trial court actually imposed consecutive sentences as a matter of discretion.  Therefore, Applicant cannot demonstrate the existence of any prejudice from counsel's alleged ineffectiveness because the trial court, believing it had discretion, still opted to impose the consecutive sentences Applicant was advised he could receive.  Therefore, I find that Applicant also is not entitled to relief on claim 1(g).

### V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [#3] filed on June 10, 2010, by Applicant Marcellous Ander Roebuck is **DENIED**;

2.  That this case is **DISMISSED WITH PREJUDICE**; and

3.  That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

Dated August 16, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge